UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-4694 (JMR/AJB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| PETITIONER, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| v. | ) | |
| | ) | |
| HALSTON C. KEARNEY, | ) | |
| | ) | |
| RESPONDENT. | ) | |

BOYLAN, Magistrate J.

The above-titled matter came on for hearing before the undersigned Magistrate Judge upon the Government's Petition to Determine Present Mental Condition of an Imprisoned Person Due for Release under 18 U.S.C. § 4246 [Docket No. 1]. An evidentiary hearing on the petition was conducted on October 30, 2008 at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). Assistant United States Attorney David W. Fuller appeared on behalf of the United States. Assistant Federal Defender Katherine M. Menendez appeared on behalf of Respondent Halston Kearney, who was present throughout the hearing.

This matter is before the undersigned Magistrate Judge for a Report and Recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(a). Upon the following Findings of Fact and Conclusions of Law, it is **recommended** that:

1. The Petition to Determine Present Mental Condition of an Imprisoned Person Due for Release Under 18 U.S.C. § 4246 [Docket No. 1] be **granted**;

2. Respondent be found to be suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another or serious damage to

       property of another, and for the treatment of which he is in need of hospitalization in a suitable psychiatric facility;

2. Suitable arrangements for State custody and care of Respondent be deemed presently unavailable;

3. Respondent be committed to the custody of the United States Attorney General; and

4. FMC Rochester or a similar Bureau of Prisons medical center be deemed a suitable facility at which to treat Respondent's mental illness.

**I.     APPLICABLE LAW**

"Section 4246 provides for the indefinite hospitalization of a federal prisoner who is due for release but who, as the result of a mental illness, poses a significant danger to the general public." United States v. Williams, 299 F.3d 673, 676 (8th Cir. 2002). In a proceeding under 18 U.S.C. § 4246, the government bears the burden of proving, by clear and convincing evidence[1] that: (1) the person suffers from a mental disease or defect; (2) the person's release would create a substantial risk of bodily injury to another person or serious damage to property of another; and (3) that no available, suitable state placement exists. 18 U.S.C. § 4246(a), (d); see United States v. LeClair, 338 F.3d 882, 884-85 (8th Cir. 2003); United States v. S.A., 129 F.3d 995, 998, 1000 (8th Cir. 1997); United States v. Ecker, 30 F.3d 966, 970 (8th Cir. 1994).

"Section 4246 is specifically designed to avert the public danger likely to ensue from the release of mentally ill and dangerous detainees." S.A., 129 F.3d at 999. Nonetheless, the law "applies only in those unique situations where suitable arrangements for state care and custody are

---

[1] Clear and convincing evidence is something more than proof by a preponderance of the evidence, but less than proof beyond a reasonable doubt. See Addington v. Texas, 441 U.S. 418, 425 (1979).

unavailable." Id. at 1000.  "Thus, civil commitment under section 4246 occurs 'only in those rare circumstances where a person has no permanent residence or there are no State authorities willing to accept him for commitment.'"  Id. (quoting H.R. Rep. No. 98-1030, at 250 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3432).

## II. APPLICATION TO RESPONDENT

### A. Stipulations.

At the hearing, Daniel J. Shine, Jr., M.D., Staff Psychiatrist at FMC Rochester, and Tanya K. Willford, Clinical Social Worker at FMC Rochester, testified on behalf of the United States. Mr. Kearney testified on his behalf.  Respondent's counsel stipulated to the qualifications of the government's witnesses.  The Court admitted into evidence without objection the following exhibits:

Exhibit 1: Inmate's Central File, Medical File, and Psychology Data System (PDS) Records

Exhibit 2: Curriculum vitae for Dr. Daniel Shine

Exhibit 3:  Risk Assessment report dated May 8, 2008

Exhibit 4: Curriculum vitae for Tanya Willford

Exhibit 5:  Psychosocial Assessment dated September 2, 2008

Exhibit 6:  Telephone log reflecting placement efforts by social worker

### B. Respondent is Suffering From a Mental Disease or Defect.

Mr. Kearney is a 22 year-old African American male imprisoned in 2007 for the offense of Assault on a Federal Employee.  He was transferred from the Metropolitan Detention Center in Los Angeles, California, to FMC Rochester in February 2008 in connection with aggressive behaviors related to a diagnosis of Schizophrenia.  Because Mr. Kearney was assaultive en route and upon his arrival, he was housed in the Special Housing Unit ("SHU"), a locked unit at FMC Rochester.  Mr.

Kearney's projected good conduct release date of September 18, 2008, was stayed by the filing of the government's petition under 18 U.S.C. § 4246 in this matter.

This Court finds no serious dispute in the record that Mr. Kearney is presently suffering from a mental disease or defect – namely, Schizophrenia. The government presented evidence to this effect in the form of a Risk Assessment report dated May 8, 2008 (Exhibit 3) and an updated Risk Assessment report dated January 13, 2008, as well as through the testimony of prison psychiatrist Daniel Shine, at the October 30, 2008 hearing. This evidence all consistently showed that Mr. Kearney suffers from Schizophrenia, and Mr. Kearney has not contested it.

> **C.    As a Result of Respondent's Mental Disease, His Release Would Create a Substantial Risk of Bodily Injury to Another Person or Serious Damage to Property of Another.**

This Court also finds Mr. Kearney to be dangerous in the sense required for commitment under 18 U.S.C. § 4246. The May 8, 2008, risk assessment report acknowledges that mental health professionals have limited ability to predict future violence related to mental illness, but goes on to consider several established factors including Mr. Kearney's history of dangerousness, history of drug and alcohol use, previous use of weapons, history of problems taking prescribed medications, lack of social support, and Mr. Kearney's age. See, e.g., Ecker, 30 F.3d at 970 (listing some of these and other factors). Several of these factors point toward the conclusion that releasing Mr. Kearney at this time would create a substantial risk of harm to others.

As Dr. Shine testified, research has consistently shown that a history of aggression is the best single predictor of future aggression. "Overt acts of violence, however, are not required to prove dangerousness." Ecker, 30 F.3d at 970 (citation omitted). In addition, where overt acts have occurred, those acts need not have been recent in order for dangerousness to be established by clear

and convincing evidence.  See United States v. Evanoff, 10 F.3d 559, 562-563 (8th Cir. 1993).

In this case, Mr. Kearney has engaged in violent conduct as a result of his mental illness on several occasions.[2]  Mr. Kearney's offense of conviction took place in August 2007 and involved an attack on a security guard at a Federal building in Los Angeles.  The security guard apparently found Mr. Kearney loitering and asked him to leave.  Mr. Kearney, who was homeless at the time, struck the guard and attempted to grab his firearm.  A second guard came to the first guard's assistance, and Mr. Kearney was placed under arrest.  Mr. Kearney later told authorities he attacked the victim because he felt startled and threatened, and stated that he tried to grab the security guard's firearm because he "had to take him out."  Mr. Kearney was first diagnosed with Schizophrenia at this time.

During his detention in California, Mr. Kearney engaged in aggressive behaviors such as "head butting" another inmate, banging on his cell door, and yelling obscenities at staff.  While en route to FMC Rochester in February 2008, Mr. Kearney was described as assaultive and spitting on the plane.  Upon his arrival in Rochester, he admitted to thoughts of killing other people and was placed in SHU based on his level of disorganization and unpredictability.  Mr. Kearney was put on antipsychotic medications and has been described as generally (though not entirely) compliant with the prescribed regimen while at FMC Rochester.

On March 28, 2008, Mr. Kearney was considered eligible for a temporary release from the

---

[2]  The facts as recounted here are taken largely from the uncontradicted risk assessment reports dated May 8, 2008, and January 13, 2009.  Those reports were prepared and signed by Chief of Psychology Andrew Simcox, Ph.D., Staff Psychologist Jason Gabel, Ph. D., and Staff Psychiatrist Daniel J. Shine, Jr., M.D., all from FMC Rochester.  The panel reviewed Mr. Kearney's file and heard from his treatment team, as well as Mr. Kearney himself, for the purpose of determining whether he met the criteria for commitment under 18 U.S.C. § 4246.

locked housing unit for therapeutic purposes. Without warning or provocation, he assaulted another patient with a chair, striking him across the head and causing abrasions and a scalp laceration that required 15 sutures. The victim was a 57 year-old man of relatively small stature. When prison staff responded to this incident, Mr. Kearney spat on and swung at them, striking one in the face. Mr. Kearney was returned to the locked unit and was unable to describe any reason for the assault, but later admitted hearing voices commanding him to carry out the attack. When asked what he would do if he heard such voices instructing him to harm others in the future, Mr. Kearney told the risk assessment panel he would "think about it." See, e.g. United States v. Steil, 916 F.2d 485, 487-88 (8th Cir. 1990)(prisoner suffered from paranoid schizophrenia and 8th Circuit affirmed that violent delusions and threats were sufficient to prove dangerousness even though detainee never acted on said thoughts); United States v. LeClair, 338 F.3d 882, 886 (8th Cir. 2003)(Circuit court affirmed this Court's dangerousness finding based in part on medically-diagnosed schizophrenia of prisoner). Thus, both the August 2007 incident and the March 2008 incident appear to be linked to Mr. Kearney's mental illness.

Other factors tending to support a conclusion of dangerousness are present in this case. For example, Mr. Kearney has no social support network to speak of and no known employment history. When the risk assessment panel asked Mr. Kearney about his release plans, he initially stated that he "would return to Los Angeles but had no place to stay," and later elaborated that he would "live in the streets," "ask people for money," and "go to the Salvation Army for assistance with food, clothing, and shelter." Mr. Kearney has also repeatedly exhibited a lack of insight into his mental health problems and has stated that he has no intent to accept medication in the future. There is some evidence of a history of marijuana abuse by Mr. Kearney. Additionally, Dr. Shine testified

that Mr. Kearney's age may be an aggravating factor given the association of youth with an increased propensity for violent conduct.

The record additionally reflects a history of violence on Mr. Kearney's part predating the apparent onset of his mental illness. For example, while in a juvenile home in 2004, Mr. Kearney attacked another resident he believed to have stolen his clothing, causing the invidual two black eyes and necessitating seven stitches to his face. While this incident does not seem to be directly related to Mr. Kearney's mental illness, it would be anomalous to ignore such indicators of a proclivity toward violence or possible habitual tendencies. See S.A., 129 F.3d at 1000 (noting respondent's "long history of violent and aggressive behavior and mental instability," repeated assaults while at "juvenile correction facilities," "penchant for the destruction of property," and "visual and auditory hallucinations, some of which urge[d] him to act violently"); United States v. Sahhar, 917 F.2d 1197, 1207 (9th Cir. 1990) (a finding of dangerousness under § 4246 may be based on "any activity that shows a genuine possibility of future harm to persons or property").

Mr. Kearney's counsel argues that his episodes of violence have been less frequent than those exhibited by some other mentally ill inmates eligible for commitment pursuant to 18 U.S.C. § 4246. In addition, the most recent episode – that involving a chair – occurred several months prior to the hearing in this matter and no significant outbursts are known to have taken place since March 2008. In part for these reasons, his counsel urges that Mr. Kearney's aggression does not rise to the level required by § 4246.

This Court cannot agree. Each case turns on its own unique circumstances, and Mr. Kearney's situation presents more than enough evidence to conclude that he would pose a significant danger to society if released in his current condition. It is fair to assume that Mr. Kearney's lack of

violent conduct in recent months owes at least in part to his tightly controlled environment and the absence of opportunities to cause harm during this period, given his ongoing confinement in a locked unit at FMC Rochester. In addition, the incident involving a chair gives particular cause for concern insofar as it occurred during a time when Mr. Kearney was thought to be doing relatively well and came without warning. Mr. Kearney offered no medical testimony or expert opinion contradicting the conclusion reached by multiple professionals at FMC Rochester concerning Mr. Kearney's dangerousness.[3]

For all these reasons, this Court concludes that Mr. Kearney's release would create a substantial risk of bodily injury to another person or serious damage to property of another.

### D. Suitable Arrangements for State Custody and Care of Respondent Are Not Available.

This Court also recommends that suitable State placement for Mr. Kearney be deemed unavailable. At the hearing, the government offered testimony from Tanya Willford, the staff social worker at FMC Rochester assigned to Mr. Kearney's case. As Ms. Willford explained, California has not entered into the Interstate Compact by which some states have agreed to make their mental hospitals available to out-of-state patients under certain circumstances. As a result, California is under no obligation even to consider taking a mentally ill patient in Mr. Kearney's situation if released. Nonetheless, Ms. Willford described her efforts over the course of several months to

---

[3] On January 5, 2009, this Court instructed the government to provide a written report detailing Mr. Kearney's actions and mental condition from the October 30, 2008, hearing. The same panel of experts that met to conduct the original risk assessment reconvened and generated the January 13, 2009, updated risk assessment report. That report reflected no improvement in Mr. Kearney's condition and concluded that, if he were released, "individuals in Mr. Kearney's immediate environment would be at risk to be assaulted by Mr. Kearney, and that such an assault may be unprovoked and difficult to predict." See [Docket No. 16].

secure appropriate placement for Mr. Kearney, including her phone calls to the Los Angeles County Department of Mental Health, the Conditional Release Coordinator for the state of California, Mr. Kearney's assigned probation officer, and Mr. Kearney's step-sister. As explained by Ms. Willford, these efforts were unsuccessful; her phone calls either went unreturned or yielded no placement options consistent with the risk assessment panel's conclusions about Mr. Kearney's needs and the risks he poses to those around him.[4] Ms. Willford testified that her efforts to find suitable placement for Mr. Kearney are ongoing and would continue irrespective of the Court's order in this matter.[5] She also stated that she and her colleagues at FMC Rochester are frequently successful in securing placement for inmates, although this often takes time.

Consequently, this Court recommends that suitable arrangements for State custody and care of Mr. Kearney be deemed unavailable at this time.

### E. FMC Rochester or a Similar Bureau of Prisons Medical Center is a Suitable Facility.

Finally, there is no dispute in this case that FMC Rochester is a suitable facility for Mr. Kearney to receive care and treatment. Dr. Shine described in general terms the kinds of services offered at the facility as well as the anticipated course of treatment for Mr. Kearney. No evidence

---

[4] Mr. Kearney's counsel suggests that a halfway house would be an appropriate setting for Mr. Kearney, and points out that he would remain subject to the terms of supervised release imposed at sentencing. As noted in the January 13, 2009, risk assessment update, however, Mr. Kearney specifically stated that "he was under no obligation to report to a probation officer and had no intent to cooperate with any type of formal supervision." More importantly, placement in a halfway house would be directly inconsistent with the risk assessment panel's conclusion that Mr. Kearney continues to require inpatient treatment.

[5] The Court would also note that the Attorney General must continue efforts to place Respondent in a State facility of his domicile and that while confined Respondent shall receive treatment which may lead to his release or conditional release. 18 U.S.C. § 4246 (d-e).

to the contrary has been presented.  Consequently, this Court recommends that FMC Rochester or a Bureau of Prisons medical facility offering similar services be deemed a suitable facility.

## RECOMMENDATION

For the reasons set forth above, it is **recommended** that:

1. The Petition to Determine Present Mental Condition of an Imprisoned Person Due for Release Under 18 U.S.C. § 4246 [Docket No. 1] be **granted**;

2. Respondent be found to be suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another or serious damage to property of another, and for the treatment of which he is in need of hospitalization in a suitable psychiatric facility;

3. Suitable arrangements for State custody and care of Respondent be deemed presently unavailable;

4. Respondent be committed to the custody of the United States Attorney General; and

5. FMC Rochester or a similar Bureau of Prisons medical center be deemed a suitable facility at which to treat Respondent's mental illness.


Dated:    February 25, 2009


  s/ Arthur J. Boylan

Arthur J. Boylan

United States Magistrate Judge

**Notice**

Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **March 11, 2009.**